# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| ANNIE SLOAN INTERIORS, LTD. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 18-8431 |
| DAVIS PAINT CO. AND KEVIN OSTBY | SECTION: "S" (1) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendants's **Motion to Dismiss for Lack of Personal Jurisdiction** (Rec. Doc. 11) is **DENIED**;

**IT IS FURTHER ORDERED** that defendants's **Motion to Transfer Pursuant to 28 U.S.C. 1404(a)** (Rec. Doc. 13) is hereby **DENIED**.

This matter is before the court on the Motion to Dismiss for Lack of Personal Jurisdiction filed by defendant Kevin Ostby, in which Ostby seeks dismissal of the claims against him due to lack of jurisdiction over his person, and the Motion to Transfer Pursuant to 28 U.S.C. 1404(a) (Rec. Doc. 13) filed by Ostby and ddefendant Davis Paint Company ("Davis"), in which they argue that the Western District of Missouri is a more convenient forum. Plaintiff, Annie Sloan Interiors, Ltd. ("ASI") opposes both motions. For the reasons which follow, the motions are denied.

## BACKGROUND

ASI is the creator of a line of decorative paint products sold under the ANNIE SLOAN® and CHALK PAINT® trademarks. Davis Paint Company ("Davis") is the American

manufacturer of ASI's paint products, and Ostby is Davis' president. Until recently, non-party Jolie Design & Décor, Inc. ("JDD"), was the American distributor of ASI's paint products. JDD is a Louisiana corporation owned and operated by Louisiana residents Lisa Rickert, Scott Rickert ("the Rickerts"), and Jason Mobley.

In 2010, ASI, JDD, and Davis signed a manufacturing agreement under which Davis would manufacture ASI's products for JDD's exclusive distribution within the United States. Under that agreement, Davis manufactured and shipped paint to Louisiana since 2010. However, over time, the relationship deteriorated between ASI and JDD, and in May 2018, ASI informed JDD that it would be terminating their distribution agreement as of November 5, 2018.

Apparently in anticipation of this development, in April of 2018, the Rickerts and Jason Mobley formed a new Louisiana company, Jolie Home, LLC ("JHL"). The complaint alleges that it was their plan to have Davis produce the same "chalk paint" products for JHL that Davis had previously made for ASI, and to stop making paint for ASI. Eventually, Davis did enter into a manufacturing agreement with JHL, and ceased manufacturing paint for ASI.

ASI alleges that in furtherance of this plan, Ostby directed and received numerous communications to and from the Rickerts in Louisiana. For example, in March 2018, the Rickerts, Mobley, and Ostby participated in a text message exchange in which they discussed the launch of the new company, and in which Lisa Rickert stated that she had "decided that the new name will be Jolie and we will push as The Original Chalk Paint." On May 11, 2018, Lisa Rickert sent Ostby an email with a proposed label for JHL's paint can, which this court, in a

related case,[1] has found infringed on ASI's long-time label by copying its trade dress. (Ex. 1-22). Kevin Ostby replied the same day that "[t]his may come to a head quickly, you might think about paper labels [as opposed to lithography labels] to start everywhere." On May 24, 2018, Ostby sent an email to the Rickerts advising them of the expected time frame to produce JHL's cans. During June 2018, Ostby and Lisa Rickert exchanged numerous text messages, which also reference related telephone discussions of their plans to produce JHL's paint products. Between July 3 and July 5, 2018, Ostby and Scott Rickert exchanged multiple emails related to the production of JHL's infringing paint products, including how to overlay JHL labels on top of ASI's labels so that ASI's paint could be passed off and sold as JHL's products.

On July 5, 2018, Ostby also sent an email to Lisa Rickert stating that his lawyer was concerned about JHL's infringing label. Lisa Rickert replied to Ostby and stated that JHL planned to go forward with design and content as it stood.

On September 6, 2018, ASI filed this action against Davis and Ostby in the Eastern District of Louisiana. ASI asserted claims against Ostby in his individual capacity for misrepresentation, contributory infringement and unfair competition, and violations of Louisiana's Unfair Trade Practices Act ("LUTPA").

## DISCUSSION

**I.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

---

[1] Annie Sloan Interiors, Ltd. v. Jolie Design & Decor, Inc., 17-11767 (E.D. La.).

*Applicable Law*

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction over the defendant is proper. Seiferth v. Helicopteros Attuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). In the absence of formal discovery or an evidentiary hearing, only a prima facie showing that jurisdiction is present is needed to survive a Rule 12(b)(2) motion to dismiss. Id.

In general, personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. ICEE Distrib., Inc. v. J&J Snack Foods, 325 F.3d 586, 591 (5th Cir. 2003). Because Louisiana authorizes jurisdiction to the full extent permitted by the Constitution, see La. Stat. Ann. § 13:3201, the sole issue in this motion is whether the exercise of jurisdiction over defendant Ostby would be consistent with due process. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999).

Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316. Personal jurisdiction over a non-resident defendant is either general or specific. General jurisdiction is present when the defendant's activities in the forum state are sufficiently substantial or continuous and systematic to justify the exercise of jurisdiction over him in all matters. See Helicopteros Nacionales de

4

Colombia S.A. v. Hall, 466 U.S. 408, 414–16. Specific jurisdiction arises when a defendant's specific contacts with the forum give rise to the claims at issue. Id.

The court applies a three-step analysis to determine if specific jurisdiction is present:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or result from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth, 472 F.3d at 271. "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." Id.

*Analysis*

ASI has sued Ostby in his personal capacity for damages resulting from misrepresentation (Count 3), contributory infringement and unfair competition (Count 4), and violations of Louisiana's Unfair Trade Practices Act ("LUTPA") (Count 5). In the instant motion, Ostby argues that because his actions were undertaken by him solely in his capacity as an officer of Davis, he has no personal contacts with this jurisdiction, relying upon the so-called fiduciary shield doctrine.

At the outset, the court notes that "[W]hen corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1312 (5th

Cir.1991) (citation omitted); see also Shingleton v. Armor Velvet Corp., 621 F.2d 180, 183 (5th Cir.1980) ("Officers who take part in the commission of a tort by the corporation may be held personally liable therefor.") (citations omitted). For "the officer to be held personally liable [s/he] must have some direct, personal participation in the tort, as where the defendant was the "guiding spirit" behind the wrongful conduct . . . or the "central figure" in the challenged corporate activity." Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 174 (5th Cir.1985) (citation omitted).

In this case, the face of the complaint reflects that plaintiff has alleged torts for which Ostby was the "guiding spirit," at least as far as Davis Paint's involvement was concerned. Thus, he has potential personal liability. Accordingly, the court must determine whether it may exercise personal jurisdiction over him.

With respect to Ostby's assertion that the fiduciary shield doctrine prevents this courts exercise of personal jurisdiction over him, while the court recognizes that this doctrine has on occasion been invoked in both Louisiana federal and state courts, it notes that the Louisiana Supreme Court "has never expressly adopted or applied the fiduciary shield doctrine. Similarly, the U.S. Supreme Court has declined to apply the fiduciary shield doctrine." Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., 954 So. 2d 120, 129 (La. 2007)(Kimball, J., concurring).[2]

---

[2] In Southeast Wireless, the majority opinion conducted a fiduciary shield analysis, but decided it was inapplicable, adopting the reasoning of Escoto v. U.S. Lending Corporation, 675 So.2d 741 (La. App. 1996),which had previously conducted a fiduciary shield analysis and held that it was inapplicable, because under the circumstances of that case, "fair play and substantial

To the contrary, the Supreme Court has held explicitly that "we . . . reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . . Each defendant's contacts with the forum State must be assessed individually. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984). "[I]f a state's long-arm statute allows jurisdiction to the extent permitted by the Federal Constitution, employing the fiduciary shield to insulate employees is inconsistent with the wide reach of the statute, and in such a jurisdiction, the jurisdictional question becomes whether the court's exercise of jurisdiction accords with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment, and not whether the fiduciary shield doctrine bars jurisdiction." 79 A.L.R.5th 587 § 2(b).

Thus, the court must analyze whether Ostby has minimum contacts with the forum, whether the cause of action arises out of those contacts, and whether the exercise of personal jurisdiction over him is fair.

**1.     Minimum contacts**

Plaintiff's complaint details numerous acts and communications by Ostby directed to Louisiana. Relevant to plaintiff's misrepresentation, contributory infringement, and unfair trade

---

justice [were] not offended by requiring the nonresident defendant's presence in a a Louisiana court." 954 So. 2d 120, 128-29. The point of Justice Kimball's concurrence, which reached the same result, was that was under Louisiana's Long Arm statute, the fiduciary shield analysis was unnecessary. Id. at 129.

practices claims herein, beginning in early 2018 Ostby engaged in negotiations with the JDD/JHL principals to supply them with paint products that were subsequently found to have been infringing. He continued to do so after his attorney warned him there could be an infringement issue. And, as the Fifth Circuit has stated, "[e]ven if the parties formed their relationship in [a foreign jurisdiction] . . . a single act by [the defendant] directed toward [the forum state] that gives rise to a cause of action . . . can support a finding of minimum contacts." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999). While in many cases "communications directed into a forum standing alone are insufficient to support a finding of minimum contacts," those are distinguishable from the present case in which "the actual content of communications with a forum gives rise to intentional tort causes of action." Id. Indeed, "this alone constitutes purposeful availment . . . . because [t]he defendant is purposefully availing himself of 'the privilege of causing a consequence' in [this jurisdiction]." Id. The court finds that Ostby's numerous and extensive communications directed to this forum, to advance a plan to produce goods which have been found to be infringing, constitute the minimum contacts required for this court to assert personal jurisdiction.

**2.     Relationship of cause of action to forum-related contacts**

As noted above, the majority of Ostby's contacts directed to Louisiana were in furtherance of the relationship with the Rickerts and JHL, and the development of the infringing product at the base of plaintiff's claims.

**3.     Fairness**

Once plaintiff has established defendant's minimum contacts and their relationship to its claims, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair. Id. at 215. "It is rare to say the assertion is unfair after minimum contacts have been shown." Id. (citations omitted). The inquiry becomes whether "traditional notions of fair play and substantial justice" are offended. Id. (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113,(1987)(other quotations and citations omitted).

This in turn is determined by consideration of the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." Id. (citations omitted). In this case, these factors reflect that haling Ostby into court here is not unfair. Travel to this district is not especially onerous, and as president of Davis, also a party to this suit, he would likely be traveling here in connection with the litigation anyway. As well, Louisiana has an interest in enforcing its own unfair trade practices laws and in furthering the fundamental social policies which underlie them. Because (as previously noted) a parallel proceeding, Annie Sloan Interiors,

Ltd. v. Jolie Design & Decor, Inc., 17-11767 (E.D. La.)., is currently pending in this district and well under way, both the plaintiff's interests in convenient and effective relief and the judicial system's interest in efficient resolution of controversies are well-served by resolving the claims against Ostby in this district. Thus, the court finds that exercising personal jursidiction over Ostly would not offend traditional ntions of fair play and substantial justice, and the Motion to Dismiss for Lack of Personal Jurisdiction filed by defendant Kevin Ostby is denied.

**II.      Motion to Transfer**

*Applicable Law*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking must show good cause for the transfer. In re Volkswagen, 545 F.3d 304, 315 (5th Cir. 2008). To determine of good cause is present to warrant a transfer, the court must examine several private and public interest factors. Id. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." Id.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] in the application of foreign law.

Id. at 315 (citing Gulf Oil Corp. v. Gilbert, 67 S. Ct. 839, 843 (1947))(other citations omitted). These factors are not necessarily exhaustive or exclusive. and "none ... can be said to be of dispositive weight." Id. (quoting Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004). "The district court has wide discretion to determine whether to transfer for the convenience of parties and in the interest of justice." Weber v. Convey, 642 F.2d 91, 93 (5th Cir.1981) (citing Bearden v. United States, 320 F.2d 99, 101 (5th Cir. 1963), cert. denied, 84 S. Ct. 679 (1964)).

*Analysis*

It is undisputed that venue is proper in both the Eastern District of Louisiana and the Western District of Missouri. Accordingly, the court's task is to analyze whether the Western District of Missouri is clearly more convenient than the Eastern District of Louisiana.

**1.      Private Interest Factors**

Notwithstanding ASI's contention that the actual paint cans (which are located in this district) are the main sources of proof in this case, the court finds that the main sources of proof in this case will be the testimony and correspondence between the principals of the involved parties, as well as the related documents. All of these have been reduced to documentary form, including extensive deposition testimony of the parties, and as a result of the litigation surrounding the motion for preliminary injunction in the related case, Annie Sloan Interiors, Ltd. v. Jolie Design & Decor, et al, 17-11767

11

(E.D. La.), that documentation is physically present in the Eastern District of Louisiana. Accordingly, with respect to the relative ease of access to sources of proof, the Western District of Missouri has no advantage over this district.

With respect to the availability of compulsory process to secure the attendance of witnesses, while witness lists have yet to be filed in this matter, it appears the main witnesses other than the parties themselves will be JHL owner Lisa Rickert, her husband, and possibly her employees. All of these non-party witnesses live and work in Louisiana, and would not be subject to compulsory process in the Western District of Missouri. Thus, this factor does not favor transfer.

As for the cost of the attendance of willing witnesses, the majority of witnesses live either in this district, or out of the country, not in the Western District of Missouri. Thus, this factor weighs against transfer.

No other valid practical problems have been identified mitigating for or against transfer, and accordingly, this factor is neutral.

**2.     Public Interest Factors**

No specific facts have been posited regarding court congestion in the Western District of Missouri and how it compares to this district. However, as previously noted, this court is already overseeing the related case of Annie Sloan Interiors, Ltd. v. Jolie Design & Decor, et al, 17-11767. Maintaining the instant action here avoids the duplicative judicial effort required for a Missouri judge to entertain this matter, because

this court is already very familiar with the underlying facts and documents. Accordingly, the judicial efficiency resulting from keeping this action in the Eastern District of Louisiana weighs against transfer based on administrative difficulties and court congestion.

As for the local interest in having localized interests decided at home, resolution of this matter will involve application of Louisiana's unfair competition laws, including the Louisiana Unfair Trade Practices Act ("LUTPA"), which Louisiana has an interest in adjudicating. Accordingly, this factor weighs against transfer. This district's familiarity with LUTPA also favors Louisiana as a forum.

Finally, with respect to conflict of laws, movant argues that Missouri state law applies to some of plaintiff's claims, and that it is in conflict on some points with Louisiana law. While the court pretermits a decision at this juncture on whether Missouri law will apply to any issues in this case, it is confident that it can resolve any conflicts issues. Nevertheless, assuming for the sake of argument that this factor favors transfer, it does not change the result herein.

Based on the foregoing analysis, the court finds that, with the possible exception of one factor, all of the factors are either neutral or favor maintaining this matter in the Eastern District of Louisiana. Thus, defendants have not satisfied their burden of demonstrating that the Western District of Missouri is clearly more convenient than this district, and defendants's Motion to Transfer Pursuant to 28 U.S.C. 1404(a) is denied.

New Orleans, Louisiana, this  25th  day of January, 2019.

                    **MARY ANN VIAL LEMMON**
                    **UNITED STATES DISTRICT JUDGE**